# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| TOMMY EARL JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| VS. | ) | No. 14-2492-JDT-dkv |
| | ) | |
| | ) | |
| DONALD WILLIE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

---

## ORDER GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS,* ASSESSING $350 CIVIL FILING FEE, ADDRESSING PENDING MOTIONS, DISMISSING CASE AND GRANTING LEAVE TO AMEND

---

On June 23, 2014, Plaintiff Tommy Earl Jones, Tennessee Department of Correction ("TDOC") prisoner number 464968, an inmate at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*, accompanied by motions seeking the appointment of counsel and for an injunction. (ECF Nos. 1, 2 & 3.) The Clerk shall record the Defendants as Donald Willie, a Family Nurse Practitioner at the WTSP;[1] the State of Tennessee; former WTSP Warden Jerry Lester; TDOC Commissioner Derrick Schofield; Tennessee Governor Bill Haslam; and Lynette

---

[1] While Plaintiff refers to Willie as a "prison doctor" (ECF No. 1 at PageID 3), he also specifically alleges that Willie is an "FNP" (*id.* at PageID 5, 6).

Williams.  On September 17, 2014, Plaintiff filed a motion seeking leave to proceed *in forma pauperis.*  (ECF No. 4.)

On November 24, 2014, Plaintiff filed an amended complaint adding Defendant Williams, who is alleged to be a doctor employed at the WTSP.  (ECF No. 5 at PageID 34.)  The amended complaint appears to be intended to supplement the original complaint.  On November 26, 2014, Plaintiff filed another motion for an injunction and another motion for appointment of counsel.  (ECF Nos. 6 & 7.)

Under Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b), a prisoner bringing a civil action must pay the full filing fee required by 28 U.S.C. § 1914(a).[2]  The statute merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997) ("[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan.  Prisoners are no longer entitled to a waiver of fees and costs."), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).

---

[2] Twenty-eight U.S.C. § 1914(a) requires a civil filing fee of $350.  However, pursuant to § 1914(b), "[t]he clerk shall collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States."  Effective May 1, 2013, the Judicial Conference prescribed an additional administrative fee of $50 for filing any civil case, except for cases seeking habeas corpus and cases in which the plaintiff is granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915.  Because the Court is denying leave to proceed *in forma pauperis* in this case, Plaintiff is liable for the entire $400 fee.

However, not all indigent prisoners are entitled to take advantage of the installment payment provisions of § 1915(b).  Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Thus, "[s]uch a litigant cannot use the period payment benefits of § 1915(b).  Instead, he must make full payment of the filing fee before his action may proceed."  *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).  The Sixth Circuit has upheld the constitutionality of this provision.  *Wilson v. Yaklich*, 148 F.3d 596, 602-06 (6th Cir. 1998).

Plaintiff has filed at least three previous civil rights lawsuits that were dismissed for failure to state a claim.[3]  Therefore, Plaintiff may not take advantage of the installment-payment provisions of 28 U.S.C. § 1915(b) unless he is in imminent danger of serious physical injury.  The assessment whether a prisoner is in imminent danger is made at the time of the filing of the complaint.  *See, e.g., Vandiver v. Vasbinder*, 416 F. App'x 560, 561-62 (6th Cir. 2011); *Rittner v. Kinder*, 290 F. App'x 796, 797-98 (6th Cir. 2008); *Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312-16 (3d Cir. 2001) (en banc).

---

[3] Plaintiff previously filed *Jones v. Raye*, No. 3:12-cv-01230 (M.D. Tenn. Nov. 27, 2012) (dismissed for failure to state a claim); *Jones v. Sator*, No. 3:12-cv-00519 (M.D. Tenn. May 30, 2012) (dismissed for failure to state a claim); and *Jones v. Walls*, No. 3:09-cv-1037 (M.D. Tenn. Nov. 3, 2009) (dismissed for failure to state a claim), *aff'd*, No. 12-6568 (6th Cir. June 3, 2014).

Plaintiff's complaint alleges several claims. First, Plaintiff alleges that, on April 9, 2014, his prescriptions for Naproxen 500 mg. and antacid tablets were discontinued. Plaintiff suffers from Crohn's disease, which results in severe pain.[4] A gastroenterologist had prescribed Naproxen for moderate to severe pain in Plaintiff's back and right shoulder that he experienced on a daily basis. (ECF No. 1 at PageID 4-5.) Plaintiff had heard from various sources that pain medications are not prescribed to inmates in Tennessee. (*Id.* at PageID 7.) Plaintiff has sued Defendant Willie for discontinuing his pain medication. (*Id.*)

Plaintiff also seeks a transfer to the Lois M. DeBerry Special Needs Facility ("DSNF") in Nashville, Tennessee, and to have his active inflammatory exudate examined by gastroenterologists. "An exudate is a fluid emitted by an organism through pores or a wound, a process known as exuding." Http://en.wikipedia.org/wiki/Exudate. Medication for Crohn's disease must be approved by a gastroenterlogist and a pain specialist. The WTSP staff is only equipped to store medication and to address routine issues. Defendant Willie has allegedly failed to take Plaintiff's medical need seriously, telling Plaintiff that his condition is not serious enough to be housed at the DSNF. (ECF No. 1 at PageID 5-6.)

On May 8, 2014, Plaintiff asked Officer Dewalt, who is not a party to this action, to remove Devon Walls from his cell. Walls is a cousin of the former sheriff of Dickson County, Tennessee, and is also related to the mother of Plaintiff's child. Plaintiff claims that

---

[4] "Crohn's disease is an ongoing disorder that causes inflammation of the digestive tract, also referred to as the gastrointestinal (GI) tract. . . . The damaging inflammation resulting from Crohn's may cause pain and may make the intestines empty frequently, resulting in diarrhea and other Crohn's disease symptoms." Http://www.crohnsandcolitisinfo.com/Crohns/What-Is-Crohns-Disease.

Walls had been engaged in "whisky making, drug dealing, tobacco dealing, drug use[.]" (*Id.* at PageID 8.) Unit Manager Ragland, who is not a party to this action, was attempting to find a cell when an unidentified captain, who is not a party to this action, directed that both inmates be locked in the "hole." (*Id.*) However, it does not appear that Plaintiff was actually moved to the "hole." Instead, on May 8, 2014, inmate Mario Morgan moved into Plaintiff's cell. On May 26, 2014, Morgan began making whiskey. (*Id.*)

On or about May 20, 2014,[5] Plaintiff encountered Dennis Yeager, who is responsible for classification and who also is not a party to this action. (*Id.* at PageID 8-9.) Plaintiff told Yeager that Willie had refused to recommend that he be transferred to the DSNF and had discontinued his pain medication a month after he had filed a lawsuit. (*Id.* at 9.)[6] Yeager allegedly told Plaintiff there was nothing he could do for him. However, Plaintiff contends that Yeager could have emailed other prisons to see whether any would accept Plaintiff. (*Id.*)

On May 22, 2014, the prison was visited by TDOC staff. A diet sheet posted in the kitchen reflected that Plaintiff was to receive meals with no spices and three snacks per day. On the diet line, Plaintiff is served cheese or peanut butter, both of which he describes as

---

[5] The date in the complaint is not clearly legible.

[6] On December 2, 2013, Plaintiff filed his complaint in *Jones v. Cuddy,* No. 13-2942-JDT-tmp (W.D. Tenn.). That suit, brought against Dr. Stephen Cuddy, alleged that Cuddy had refused to provide medication for abdominal pain, nausea and vomiting caused by Crohn's disease and refused to refer Plaintiff to a specialist for his active inflammatory exudate. The case was dismissed for failure to state a claim on January 16, 2014. On appeal, the Sixth Circuit partially affirmed the dismissal but vacated and remanded with regard to Plaintiff's claim that he was denied pain medication. *Jones v. Cuddy,* No. 14-5087 (6th Cir. Sept. 5, 2014).

"bad," or sides from the regular meal with no meat. Someone at the WTSP allegedly has altered the records to reflect that Plaintiff is being properly fed. (*Id.* at PageID 10.)

On May 24, 2014, a food steward refused to serve Plaintiff a bland tray. Sergeant Murley asked Plaintiff to go to the clinic to get verification. Plaintiff keeps his verification with him at all times. A nurse walked Plaintiff to the kitchen to explain the situation, but the steward refused to listen. (*Id.* at PageID 9-10.)

On May 30, 2014, no lunch had been prepared for Plaintiff. Plaintiff was in pain and advised Officer Cotton, who is not a party to this action, that he was leaving because he was not feeling well and that he planned to file a grievance. The complaint alleges that, "[u]pon leaving a tray was brought out." (*Id.* at PageID 10.) The tray consisted of rice, greens, corn and a biscuit, which he alleges is not a proper diet for someone with a serious medical condition. (*Id.* at PageID 11.)

After receiving his tray, Plaintiff went to the medication window to speak to the nurse on call. Plaintiff told the nurse that, if his name had been submitted to the dietician in Nashville, he would be receiving his medically required bland diet. The nurse allegedly replied that the kitchen had been notified of Plaintiff's dietary restrictions and that the clinic has no control over the kitchen. Plaintiff told the nurse that he was in pain and needed to be transferred to Nashville. The nurse said that Plaintiff had refused medical, but he has been constantly asking to be transferred to Nashville. The nurse said that Plaintiff had been refusing to come to the clinic, and Plaintiff replied that, the last time he visited the clinic, Defendant Willie "stated I have no terminal illness, by stating there was nothing wrong with

me." (*Id.*) The nurse, who is not a party to this action, allegedly ignored Plaintiff's statement that he was in pain and told him to leave the clinic. A female officer, who is not a party to this action, walked over and told Plaintiff to leave the clinic. Plaintiff replied that he was just trying to get fed and that he was in pain. (*Id.*)

A yard officer arrived, and Plaintiff told him that the kitchen staff knew he was coming to the clinic and showed him a copy of his therapeutic diet order. The officer said the nurses had told him that Plaintiff was refusing medical treatment. Plaintiff replied that he had not been served lunch and was in pain. The officer, who is not a party to this action, told Plaintiff to get away from the clinic. The yard officer claimed that the nurses had told him that Plaintiff's therapeutic diet order would not be renewed and that it was really there to mislead people. (*Id.* at PageID 11-12.)

The complaint also alleges:

> Since April 2014 the water in cell 4.B.18 has been defected [sic]. One situation the water runs for over two weeks. Two theres only hot water for over two weeks. Three theres only cold water for over two weeks. For this day 6.3.2014 prison locked down and officer Fussell refused to bring bag of ice when told cell has no running cold water[.]

(*Id.*)

Plaintiff seeks a transfer to the DSNF and "relief under Americans with Disability Act." (*Id.* at 7.)

In his amended complaint, Plaintiff alleges that, during a chronic care visit in 2014, he advised Defendant Williams that he needed medication to treat the pain associated with his Crohn's disease. Williams allegedly denied treatment. (ECF No. 5 at PageID 36.) The

amended complaint also alleges that Plaintiff wrote to Defendants Schofield and Haslam about his need for pain medication. (*Id.* at PageID 36-37, 37-38.) Plaintiff informed Defendants that his mucosal surface is entirely ulcerated, causing inflammatory exudate. Defendant Willie said that Plaintiff was not telling the truth and did not refer him to be seen by a specialist. (*Id.* at PageID 38.) Defendant Williams allegedly failed to act on Plaintiff's request to be seen by a specialist. (*Id.* at PageID 39.)

The amended complaint also alleges that, as of early November 2014, Plaintiff's fingernail began to turn green. He has "always" had a rash on his right hand due to his Crohn's disease. Defendant Willie allegedly advised Plaintiff to clip his fingernail as it grows. (*Id.*)

Because of his Crohn's disease, Plaintiff requires a bland diet. A bland diet is similar to the regular diet but the food is served bland. Plaintiff asked Defendants Willie and Williams to submit his name to a dietician located in Nashville, but they refused. (*Id.* at PageID 41.)

The amended complaint seeks money damages under the ADA. (*Id.* at PageID 42-43.) Plaintiff also seeks "urgently proper medical treatment and housing at Lois Deberry Special Needs." (*Id.* at PageID 43.)

Because Plaintiff's complaint alleges a danger of serious harm due to a failure to properly treat a chronic condition, he has arguably satisfied the "imminent danger" exception to § 1915(g). *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 582-83 (6th Cir. 2013) ("[A]lleging a danger of serious physical injury as a result of being presently denied adequate

8

medical treatment for a chronic illness satisfies the imminent-danger exception."). As Plaintiff has properly completed and submitted an *in forma pauperis* affidavit and a copy of his inmate trust fund account statement, the Court GRANTS leave to proceed *in forma pauperis* in accordance with the terms of the PLRA.

Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that Plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust account officer at Plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to Plaintiff's trust account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust account officer shall collect them and pay them directly to the Clerk of Court. If the funds in Plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the trust account officer is instructed to withdraw all of the funds in Plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to Plaintiff's account, the trust account officer shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that, after the initial partial filing fee is fully paid, the trust account officer shall withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to Plaintiff's

account during the preceding month, but only when the amount in the account exceeds $10, until the entire $350 filing fee is paid.[7]

Each time that the trust account officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment. All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee,
167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify Plaintiff's name and the case number on the first page of this order.

If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined, he shall provide the officials at the new prison with a copy of this order. If Plaintiff fails to abide by these or any other requirements of this order, the Court may impose appropriate sanctions, up to and including the dismissal of this action, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of inmate trust accounts at Plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the warden of Plaintiff's prison to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

---

[7] The assessment for this case is in addition to the assessments made in the other cases filed by Plaintiff. In other words, Plaintiff is not entitled to pay his filing fees one at a time. *See Goodrich v. Tyree*, No. 08-CV-13664, 2010 WL 2572773 (E.D. Mich. June 23, 2010).

Plaintiff has filed two motions seeking the appointment of counsel in this matter. (ECF Nos. 2 & 7.) Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (no constitutional right to counsel in a civil case); *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993) ("There is no constitutional or . . . statutory right to counsel in federal civil cases . . . ."). Appointment of counsel is "a privilege that is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (internal quotation marks and citation omitted). "In determining whether 'exceptional circumstances' exist, courts have examined the type of case and the abilities of the plaintiff to represent himself. This generally involves a determination of the complexity of the factual and legal issues involved." *Id.* at 606 (internal quotation marks and citations omitted). Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when his chances of success are extremely slim. *Id.* (citing *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985)); *see also Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (same).[8]

---

[8] These factors are important, because § 1915(e)(1) "does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants. *Mallard v. United States Dist. Ct.*, 490 U.S. 296, 310 (1989).

Plaintiff has not satisfied his burden of demonstrating that the Court should exercise its discretion to appoint counsel in this case. Nothing in Plaintiff's motion serves to distinguish this case from the many other cases filed by *pro se* prisoners who are not trained attorneys and who have limited access to the law library. The motions for appointment of counsel are DENIED.

Plaintiff has also filed two motions for injunctive relief in which he asks to be transferred to the DSNF. (ECF Nos. 3 & 6.) Even if Plaintiff were to establish that Defendants were deliberately indifferent to his serious medical needs, it does not follow that the appropriate remedy would be a transfer to the DSNF. *See, e.g., Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."); *Branham v. Grinage,* No. 88-1611, 1989 WL 11070, at *1 (6th Cir. Feb. 10, 1989); *Christian v. Mich. Dep't of Corr.—Health Servs.,* No. 12-12936, 2013 WL 607783, at *3 n.3 (E.D. Mich. Jan. 28, 2013) (report and recommendation), *adopted,* 2013 WL 607779 (E.D. Mich. Feb. 19, 2013); *Skinner v. Unknown Grandson,* No. 05-70556, 2006 WL 1997392, at *12 (E.D. Mich. July 14, 2006). If the Court were to find an Eighth Amendment violation, the appropriate remedy would be an order directing Defendants to provide appropriate treatment for Plaintiff's conditions. It would be up to Defendants to decide whether that treatment should be provided at Plaintiff's current prison, the DSNF, or any other facility. The motions for a preliminary injunction are DENIED.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." *Hill*, 630 F.3d at 470

(citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). "Any complaint that is legally

frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Id.* (citing

*Neitzke*, 490 U.S. at 328-29).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and
> 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for
> relief. Statutes allowing a complaint to be dismissed as frivolous give judges
> not only the authority to dismiss a claim based on an indisputably meritless
> legal theory, but also the unusual power to pierce the veil of the complaint's
> factual allegations and dismiss those claims whose factual contentions are
> clearly baseless. Unlike a dismissal for failure to state a claim, where a judge
> must accept all factual allegations as true, a judge does not have to accept
> "fantastic or delusional" factual allegations as true in prisoner complaints that
> are reviewed for frivolousness.

*Id.* at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings

drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383

(quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however,

are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v.

Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608,

612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to

comply with "unique pleading requirements" and stating "a court cannot 'create a claim

which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life

Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))); *Payne v. Sec'y of Treas.*, 73 F. App'x 836,

837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P.

8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

To state a claim under 42 U.S.C. § 1983,[9] a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or

---

[9] Section 1983 provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Court DISMISSES Plaintiff's § 1983 claim against the State of Tennessee pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2).

The original complaint contains no factual allegations against Defendants Lester, Schofield, and Haslam. The amended complaint also contains no factual allegations against

Defendant Lester.[10] When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The amended complaint alleges that Defendant Schofield "was informed by letter that prison doctors were and have been denying prisoner proper medical care, no progress was made." (ECF No. 8 at PageID 39; *see also id.* at PageID 36.) Defendant Haslam "was informed by letter that prison doctors were and have been denying prisoner proper medical care, no progress was made." (*Id.* at PageID 39; *see also id.* at PageID 36-37.) Defendants Schofield and Haslam allegedly "refused to take notification concerning terminal illness due to Crohn's Disease serious[,] as well as other complaints." (*Id.* at PageID 42.)

Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

---

[10] In fact, Defendant Lester is listed as a named party only in the original complaint. (ECF No. 1 at PageID 3.) He is not listed either in the caption or in the "Parties" section of the amended complaint. (ECF No. 5 at PageID 32, 34.)

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). A failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d at 609-10 ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). The complaint does not allege that Defendants Schofield and Haslam had any personal involvement in the events at issue. Defendants Schofield and Haslam cannot be held liable under § 1983 because of their respective positions as TDOC Commissioner and Governor, even if they did not respond to his Plaintiff's letters.[11]

Several of the incidents about which Plaintiff complains are not linked to any named Defendant. Specifically, no named Defendant is alleged to have been responsible for housing Plaintiff with Devon Walls; for threatening to have Plaintiff and Walls sent to the "hole"; for

---

[11] These parties also cannot be sued for prospective injunctive relief, *see Ex parte Young*, 209 U.S. 123, 160 (1908), because they are not alleged to have personal responsibility for the provision of medical care to prisoners at the WTSP and because a transfer to the DSNF is not an appropriate remedy for the alleged constitutional violations.

refusing to serve Plaintiff a bland food tray on May 24, 2014; for altering records to reflect that Plaintiff was being properly fed; for failing to provide Plaintiff a proper lunch on May 30, 2014; for threatening to change Plaintiff's therapeutic diet order and directing him to leave the clinic on May 30, 2014; and for failing to provide both hot and cold water to Plaintiff's cell for part of April 2014. The classification coordinator, Dennis Yeager, who allegedly failed to email other prisons to ask whether they would accept Plaintiff, is not a party to this action. Neither is Officer Fussell, who refused to bring Plaintiff a bag of ice.

"The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir. 2013) (same). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." *Johnson*, 398 F.3d at 874 (internal quotation marks and citation omitted).

The objective component of an Eighth Amendment claim requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004);

*Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted); *see also Santiago,* 734 F.3d at 590 (same); *Johnson*, 398 F.3d at 874 (same). Plaintiff has been diagnosed with Crohn's Disease, which is a serious medical condition. *See, e.g., Hendricks v. DesMarais*, No. 2:11-cv-40, 2013 WL 5408258, at *5 (S.D. Ohio Sept. 25, 2013); *Holder v. Lawson*, No. 3:10CV-P512-H, 2010 WL 3277131, at *2 (W.D. Ky. Aug. 17, 2010).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he or she had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.*

This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").

This is a case in which a prisoner received some medical treatment but he contends that a more appropriate treatment was withheld from him. "'[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703. "When a doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.*;

*see also Johnson*, 398 F.3d at 875 (same). "'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 836). The failure to approve a consultation with a specialist does not establish deliberate indifference. "A medical decision not to order an X-ray, or like measures, does not represent cruel or unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court." *Estelle*, 429 U.S. at 107.

That Defendant Willie declined to recommend that Plaintiff be transferred to the DSNF or to refer Plaintiff to a gastroenterologist for treatment of his Crohn's disease and active inflammatory exudate (which might be a complication of Crohn's disease) does not establish deliberate indifference. At most, Defendant Willie may have been negligent. *See* Slip op. at 3, *Jones v. Cuddy,* No. 14-5087 (6th Cir. Sept. 5, 2014).

Plaintiff's allegations that Defendant Willie discontinued his pain medication are not entirely consistent with his claims in case number 13-2942 that inmates in Tennessee are never prescribed pain medication. In this case, Plaintiff had apparently been prescribed Naproxen for his pain, and Defendant Willie allegedly decided to discontinue that treatment.[12] Even if it were assumed that the complaint adequately alleges an Eighth Amendment claim against Defendant Willie for discontinuing his Naproxen, process will not

---

[12] In his most recent motion for an injunction, Plaintiff stated that he had not been prescribed "oxicotine" or Lortab. (ECF No. 6 at 2.) However, the complaint does not allege the pain medication that Plaintiff had been taking was inadequate.

issue on Plaintiff's § 1983 claim at this time because the only relief sought under § 1983 is a transfer to the DSNF, which is not an appropriate remedy for the reasons previously stated.[13]

Plaintiff also purports to sue under Title II of the ADA, which provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). The term "public entity" includes "any State . . . government" and "any department, agency, special purpose district, or other instrumentality of a State[.]" *Id.* § 12131(1)(A)-(B). The Supreme Court has held that Title II of the ADA applies to prisoners housed in state prisons. *Pennsylvania v. Yeskey*, 524 U.S. 206, 213 (1998). Thus, Title II applies to claims that an inmate has been denied the benefit of, or excluded from

---

[13] While the amended complaint recites that Plaintiff's claims are brought under 42 U.S.C. § 1983 (ECF No. 5 at PageID 32), the amendment does not actually seek relief under that statute. Instead, the amended complaint seeks relief only under the ADA. (ECF No. 5 at PageID 42-43.) Therefore, it is unnecessary to address whether Plaintiff might have a claim against Defendant Williams, who is named only in the amended complaint, under § 1983.

participation in, "recreational activities, medical services, and educational and vocational programs." *Id.* at 210 (internal quotation marks omitted).

Although Plaintiff's ADA claim suffers from several deficiencies, it is unnecessary to address each defect in detail because a claim about substandard medical care ordinarily is not actionable under Title II of the ADA. *See, e.g., Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) ("Brown's complaint merely asserts that defendants violated the ADA and fails to allege any facts that demonstrate that the alleged inadequate or improper medical care he received was because of a disability."); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam) (challenge to medical treatment decisions not actionable under ADA); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("purely medical decisions . . . do not ordinarily fall within the scope of the ADA"); *Spencer v. Easter*, 109 F. App'x 571, 573 (4th Cir. 2004) (per curiam) (claim of inadequate medical care not actionable under the ADA absent evidence of discriminatory intent arising from prisoner's disability); *Baldridge-El v. Gundy*, No. 99-2398, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) (ADA does not provide a cause of action for medical malpractice); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its prisoners").

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d at 951; *see also Brown v. Rhode Island*, 511 F. App'x 4, 5 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of

notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 511 F. App'x at 5; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

With the sole exception of Plaintiff's claim against the State of Tennessee under 42 U.S.C. § 1983, the Court cannot conclude that any amendment to Plaintiff's complaint would be futile as a matter of law. Therefore, leave to amend is GRANTED. Any amended complaint must be filed within twenty-eight days after the date of this order.

Plaintiff is advised that an amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleading. The text of the complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must

arise from the facts alleged in the original complaint.  Plaintiff may add additional defendants provided that the claims against the new parties arise from the acts and omissions in the original complaint.  Each claim for relief must be stated in a separate count and must identify each defendant sued in that count.  If Plaintiff fails to file an amended complaint within the time specified, the Court will assess yet another strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE